UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANTHONY FRANCIS,                )
                                )
        Petitioner,             )
                                )
    vs.                         )        Case No. 4:08CV990 CDP
                                )
UNITED STATES OF AMERICA,       )
                                )
        Respondent.             )

## MEMORANDUM AND ORDER

Anthony Francis seeks to vacate, set aside or correct his sentence under 28

U.S.C. § 2255.  Following a jury trial, Francis was convicted for conspiring to

distribute and possess with intent to distribute more than five kilograms of

cocaine.  Criminal Case No. 4:00CR547 CDP.  Francis appealed, and the Eighth

Circuit Court of Appeals affirmed his conviction and sentence.  United States v.

Francis, 367 F.3d 805 (8th Cir. 2004).[1]  Francis petitioned the United States

Supreme Court for certiorari, which was granted.  Francis v. United States, 543

U.S. 1180 (2005).  The Supreme Court vacated the Eighth Circuit's opinion and

remanded to the appellate court for reconsideration in light of its opinion in United

States v. Booker, 543 U.S. 220 (2005).  On remand from the Supreme Court, the

---

[1]The overwhelming evidence of Francis' guilt is set out in detail in the Eighth Circuit's
opinion and will not be restated here unless necessary to resolve an issue before me.

Eighth Circuit remanded the case to me for resentencing and reinstated its earlier opinion "except as may be inconsistent with the remand for resentencing under the advisory guideline system as outlined in United States v. Booker." United States v. Francis, 141 Fed. Appx. 501, 503 (8th Cir. 2005). Applying the United States Sentencing Guidelines as advisory under Booker and the Eighth Circuit's remand, I sentenced Francis to 420 months imprisonment. Francis appealed, and the Eighth Circuit affirmed. United States v. Francis, 203 Fed. Appx. 751 (8th Cir. 2006). The Supreme Court denied Francis' subsequent petition for certiorari. United States v. Francis, 551 U.S. 1172 (2007).

Francis then filed the instant § 2255 motion, raising the following nine grounds for relief:

> 1) The government failed to disclose material exculpatory evidence and knowingly presented false testimony;
>
> 2) The prosecutor's misconduct during closing arguments by improperly arguing that conspiracy was a mental crime violated Francis' due process rights;
>
> 3) The prosecutor's misconduct during closing arguments by erroneously defining reasonable doubt violated Francis' due process rights;
>
> 4) Lay opinion testimony was improperly admitted and violated Francis' due process rights;
>
> 5) The Court, and not the jury, unconstitutionally found facts at

sentencing to increase Francis' sentence;

6) The Court unconstitutionally exposed him to a higher punishment by finding facts at sentencing based on a preponderance of the evidence;

7) The Court violated Francis' due process rights by adopting the Presentence Report's drug quantity estimates and failing to hold an evidentiary hearing to resolve his objections to the PSR;

8) The government used "inferences, conjecture, and guilt by association" to obtain his conviction in violation of his due process rights; and

9) Francis' due process rights were violated when the prosecutor refused to dismiss the indictment, which Francis claims was based on perjured testimony.

For the reasons that follow, I conclude that the records before me conclusively demonstrate that Francis has no right to relief. After careful consideration of all the evidence, I must deny Francis' motion without an evidentiary hearing for the reasons that follow.

## Background

On December 7, 2000, Francis and twelve others were charged in a one-count indictment with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 and § 841(a)(1). Francis was initially tried jointly with six co-defendants, but the jury

was unable to agree on the verdict as to him, so I declared a mistrial.[2]  Jury

selection began in Francis' retrial on August 26, 2002.  The trial lasted four days,

and on August 29, 2002, the jury found Francis guilty.

<u>Discussion</u>

A.    *No Evidentiary Hearing is Required*

I will not hold an evidentiary hearing on this matter.  "A petitioner is

entitled to an evidentiary hearing on a section 2255 motion unless the motion and

the files and records of the case conclusively show that he is entitled to no relief."

<u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008) (internal

quotation marks and citation omitted).  "No hearing is required, however, where

the claim is inadequate on its face or if the record affirmatively refutes the factual

assertions upon which it is based."  <u>Id.</u> (internal quotation marks and citation

omitted).  Here, when I consider the file as a whole I find that Francis' claims are

inadequate on their face and conclusively refuted by the record.   The motion is

denied for the reasons that follow.

B.    *Grounds Previously Decided Adversely to Francis on*
       *Appeal Cannot be Relitigated Here*

---

[2]The first trial resulted in convictions of co-defendants Robert Francis, Leo Muhammad,
and Germaine Davis and acquittals of co-defendants Jimmy Francis, Willie Ellis, and Tommy
Macon.  Anthony Francis was the only defendant on whom the jury could not agree.

"It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003) (internal quotation marks and citation omitted); see also, Thompson v. United States, 7 F.3d 1377, 1379 (8th Cir. 1993) (citing United States v. Holtzen, 718 F.2d 876, 878 (8th Cir. 1983)). Here, Grounds 6 through 8 of Francis' § 2255 motion were rejected by the Eighth Circuit on direct appeal and cannot be relitigated here.

Grounds 5, 6 and 7 are related and challenge my finding of facts relative to sentencing. In Ground 5, Francis argues that his fifth amendment rights were violated when I, not the jury, found facts (specifically, the quantity of drugs attributable to him) at sentencing. This is an Apprendi argument, so named after the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000).[3] Similarly, in Ground 6, Francis argues that he was unconstitutionally exposed to a higher punishment when I found facts at sentencing by a preponderance of the evidence, rather than beyond a reasonable doubt. Finally, in Ground 7 Francis

---

[3]Because the Eighth Circuit's Apprendi analysis on direct review specifically addressed only the sentences of Robert Francis and Muhammad, I give Francis the benefit of the doubt that this claim was not raised and decided on appeal. This means that this claim is procedurally defaulted but could be considered here if his alleged ineffective assistance of counsel claim was sufficient to avoid the default. However, because the underlying claim is meritless, counsel was not ineffective as a matter of law for failing to raise it on appeal and Francis is entitled to no relief. See Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994) (holding that as a matter of law, counsel cannot be ineffective for failing to make a meritless argument).

alleges that his Fifth Amendment rights were violated because I used "guesswork" to calculate drug quantity estimates to establish his base offense level of 36.

On appeal, the Eighth Circuit rejected the arguments made in Grounds 6 and 7 of this motion as follows:

> As we have previously held, the remedial portion of [United States v. Booker, 543 U.S. 220 (2005)] permits reliance on facts found by the sentencing court under a preponderance of the evidence standard so long as those facts are used to sentence under an advisory rather than a mandatory Guidelines range. United States v. Johnson, 450 F.3d 831, 833 (8th Cir. 2006). We previously affirmed the district court's sentencing-related factual findings, and the district court properly interpreted the scope of our remand order. On remand, the district court was aware of the advisory nature of the Guidelines and sentenced the defendants under this advisory regime, thus correcting the Sixth Amendment, Booker error.

Francis, 203 Fed. Appx. 751, 753 (8th Cir. 2006). My "sentencing-related factual findings" were affirmed in the Eighth Circuit's earlier opinion as follows:

> We next consider whether the district court erred in assessing the quantity of drugs attributable to each defendant. In jointly-undertaken criminal activity, a defendant is accountable for his own conduct as well as conduct taken by others that was in furtherance of the activity and reasonably foreseeable. U.S.S.G. § 1B1.3(a)(1)(B). This applies to drug quantities implicated in a conspiracy. United States v. Frazier, 280 F.3d 835, 852 (8th Cir. 2002). In determining drug quantity accountability, a district court may rely solely on the testimony of cooperating witnesses. United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002). Drug quantity must be established by a preponderance of the evidence, and we will reverse only if the district court clearly erred. United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001).

* * *

Anthony Francis objects to the district court's assessment that he was responsible for more than fifty kilograms of cocaine. The evidence introduced at trial showed that Anthony Francis was involved in at least eighteen narcotics loads from California to St. Louis. Anthony Francis arranged five trips with Tiffany Barry in the fall of 1998, five trips in early 1999, five more trips beginning in May 1999, and two trips in the summer of 1999. He also arranged one trip with Malarie Macon in 1999. At an estimate of eight kilograms per load, Anthony Francis was responsible for approximately 150 kilograms of cocaine. The district court's assessment of over fifty kilograms was not clearly erroneous.

Anthony Francis also contends that the district court failed to make appropriate findings of fact and credibility of witness determinations with respect to his drug quantity. We disagree. At sentencing, the district court twice made reference to the government's sentencing brief, which contained the actual mathematical figures used to calculate Anthony Francis' drug quantity assessment. This was sufficient to permit meaningful appellate review. See United States v. Atkins, 250 F.3d 1203, 1211 (8th Cir. 2001) ("[T]he district court is required to make findings of fact and rule on unresolved objections to the PSR.").

Francis, 367 F.3d at 821-22.

The Eighth Circuit rejected the same argument now made in Ground 5 of

Francis' motion when raised on appeal by Anthony Francis and Muhammad as

follows:

At sentencing, the district court set Robert Francis' offense level at 38 under U.S.S.G. § 2D1.1(a)(3), the base level for an offense involving over 150 kilograms of cocaine. Robert Francis contends that his sentence violated Apprendi, because the indictment did not allege, and the jury was not instructed that it must find, that the offense involved

in excess of 150 kilograms of cocaine. This Court has specifically rejected the assertion that the jury must make a guideline quantity finding, holding that: <u>Apprendi</u> only applies if the defendant is sentenced above the statutory maximum. It is for the district court to determine the type and amount of drugs involved when determining the applicable sentencing range under the guidelines, so long as the sentence imposed does not exceed that applicable to the offense found by the jury. <u>United States v. Miller</u>, 295 F.3d 824, 827 (8th Cir. 2002) (internal citations omitted).

At the conclusion of the trial, the district court instructed the jury that in order to find the defendants guilty, it must find that their offenses involved more than five kilograms of cocaine. Defendants' sentences were within the statutory maximum for the offense alleged in the indictment and found by the jury. Therefore, we find that defendants' <u>Apprendi</u> challenge is without merit.

<u>Francis</u>, 367 F.3d at 820-21.[4]

In an effort to circumvent the Eighth Circuit's rulings, Francis contends that he should be allowed to pursue these claims in his § 2255 motion because he now claims a violation of the Fifth Amendment, not the Sixth Amendment as argued before the appellate court. Even if Francis could raise his Fifth Amendment arguments in this proceeding, they have been squarely rejected by the Eighth Circuit. In <u>United States v. Cruz-Zuniga</u>, 571 F.3d 721, 726 (8th Cir. 2009), the appellate court rejected a defendant's argument that "the district court's finding the

---

[4]The same analysis and result applies to Francis' <u>Apprendi</u> argument. I instructed the jury that, to support a guilty verdict, the jury must first find that the offense involved more than five kilograms of cocaine. Francis' sentence of 420 months was within the statutory maximum of ten years to life for the offense alleged in the indictment and found by the jury. Therefore, his <u>Apprendi</u> challenge is without merit.

drug quantity by a preponderance of the evidence violates his Fifth and Sixth

Amendment rights" as follows:

> We review de novo constitutional challenges, <u>United States v. Bates</u>, 77 F.3d 1101, 1104 (8th Cir. 1996), and the district court's interpretation and application of the advisory Guidelines, <u>United States v. Whiting</u>, 522 F.3d 845, 849 (8th Cir. 2008).  After <u>United States v. Booker</u>, 543 U.S. 220 (2005), 'judicial factfinding is permissible at sentencing so long as the district court understands that the sentencing guidelines are advisory only.'  <u>United States v. Brave Thunder</u>, 445 F.3d 1062, 1065 (8th Cir. 2006).  Under an advisory sentencing regime, 'the district court is entitled to determine sentences based upon judge-found facts and uncharged conduct' where the defendant is 'not sentenced in excess of the statutory maximum.' <u>United States v. Garcia-Gonon</u>, 433 F.3d 587, 593 (8th Cir. 2006) (citing <u>United States v. Red Elk</u>, 426 F.3d 948, 951 (8th Cir. 2005)); <u>see</u> <u>also</u> <u>United States v. Okai</u>, 454 F.3d 848, 851 (8th Cir. 2006) (explaining, 'after Booker, facts underlying sentencing enhancements that are not used to increase the defendant's sentence above the congressionally authorized maximum need not be alleged in the indictment to pass constitutional muster' (citations omitted)). '[S]entencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence.'  <u>Garcia-Gonon</u>, 433 F.3d at 593 (citing <u>United States v. Pirani</u>, 406 F.3d 543, 551 n. 4 (8th Cir. 2005) (en banc)).  The district court understood the Guidelines were advisory and did not sentence [the defendant] above the statutory maximum.  We conclude the district court did not err by engaging in judicial factfinding and applying a preponderance of the evidence standard to determine the drug quantity attributable to [the defendant].

<u>Id.</u> at 626-27. <u>See</u> <u>also</u> <u>United States v. Valdivia-Perez</u>, 185 Fed. Appx. 543, 545

n.3 (8th Cir. 2006) ("Because defendant does not have the right to a jury trial under

the Sixth Amendment in this context, he also does not enjoy the alleged due

process right to proof beyond a reasonable doubt under the Fifth Amendment.").

Whether couched as Fifth or Sixth Amendment violations, Francis' constitutional

rights were not violated when I determined drug quantity at sentencing by a

preponderance of the evidence. Ground 5, 6, and 7 fail.[5]

In Ground 8, Francis argues that the government used "inferences,

conjecture, and guilt by association" to obtain his conviction in violation of his due

process rights. The government correctly notes that this is a sufficiency of the

evidence claim, which was rejected on appeal as follows:

> Davis and Anthony Francis argue that the evidence presented at trial
> was insufficient to support their convictions. We must reject this
> challenge if "*any* rational trier of fact could have found the essential
> elements of the crime beyond a reasonable doubt." Jackson v.
> Virginia, 443 U.S. 307, 319 (1979). In making this determination, we
> examine the evidence in the light most favorable to the verdict, giving
> it the benefit of all reasonable inferences. United States v. Cruz, 285
> F.3d 692, 697 (8th Cir. 2002).

---

[5]To the extent Francis argues in Ground 7 that I erred because "I failed to hold an evidentiary hearing to resolve defendant's specific drug quantity issues in which he objected to in his PSR," it is denied as meritless. I held a sentencing hearing for Francis on November 22, 2002, at which time I considered and overruled his objections to the PSR, and then upon resentencing, I held a second sentencing hearing on November 21, 2005. At both hearings, I overruled Francis' objections to the PSR, which included objections as to drug quantity and offense level calculations. During the first sentencing hearing, I noted that it was not necessary to have another evidentiary hearing on the issue of drug quantity because "I have heard the evidence of drug quantity twice in this case at both trials, and I believe both times defendant was present, was represented by counsel, and the evidence was subject to cross-examination, and so I think I can easily consider what was said at both trials as part of the evidence supporting the drug quantity in this case. . . ." After consideration of the extensive evidence related to drug quantity, I overruled Francis' objections to the PSR. As set forth above, the Eighth Circuit affirmed my factual findings with regard to drug quantity attributable to Francis.

To convict a defendant of a conspiracy charge, the government must show: '(1) a conspiracy existed; (2) [the defendant] knew of the conspiracy; and (3) he knowingly became a part of the conspiracy. To establish the existence of a conspiracy the government needed to prove that there was an agreement among individuals to achieve an illegal purpose.' United States v. Crossland, 301 F.3d 907, 913 (8th Cir. 2002) (internal citation omitted). '[T]he government may prove the agreement wholly by circumstantial evidence or by inference from the actions of the parties." United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995) (internal quotation omitted). 'The agreement need not be express or formal,' and '[t]he government must show no more than a tacit understanding among the participants.' United States v. Quintanilla, 25 F.3d 694, 699 (8th Cir. 1994).

Evidence introduced at trial established that Anthony Francis was active in his brother's large-scale drug conspiracy. Cooperating coconspirators testified that Anthony Francis accompanied Robert Francis on numerous drug-related trips, made several by himself, and had direct contact with the organization's source of supply. He also recruited and paid couriers, organized their trips, and supervised them by following them in a trail car. When one courier, Johnny Macon, was arrested, Anthony bailed him out of jail and discussed with him how to avoid detection in the future. This evidence was more than enough to support Anthony Francis's conviction. See United States v. Garrison, 168 F.3d 1089, 1095 (8th Cir. 1999) (affirming conviction under 21 U.S.C. § 846 where the defendant and another coconspirator met with a courier, defendant paid the courier, and defendant took possession of cocaine from the courier on two occasions).

Anthony Francis attacks the credibility of the cooperating coconspirators who testified against him, claiming that their testimony was unreliable and uncorroborated. Francis' challenge is unavailing. We have consistently held that issues of witness credibility are for a jury to decide, see United States v. Santos-Garcia, 313 F.3d 1073, 1081 (8th Cir. 2002); United States v. Aguago-Delgado, 220 F.3d 926, 935 (8th Cir. 2000); United States v. McFarland, 116 F.3d 316, 317 (8th Cir. 1997), and the case at bar does not merit derivation from this

precedent.  The cooperating coconspirators were thoroughly cross-
examined as to their plea agreements and involvement in the offense.
They did not make any significant inconsistent statements, and their
testimony was corroborated by wiretap evidence.

Francis, 367 F.3d at 819-20.  Francis again argues that he should be allowed to

relitigate this issue since he is claiming a Fifth Amendment, rather than a Sixth

Amendment, violation.  This argument is denied, as a sufficiency of the evidence

claim is a due process claim.  See Jackson, 443 U.S. at 319; United States v. Inman,

558 F.3d 742, 748 (8th Cir. 2009) (noting that sufficiency-of-the-evidence review

is undertaken "to guarantee the fundamental protection of due process of law.  That

protection requires that a defendant's guilt be established by proof beyond a

reasonable doubt of every fact necessary to constitute the crime with which he is

charged.") (internal quotation marks and citations omitted).  Because the Eighth

Circuit previously decided that the evidence was sufficient to support Francis'

conviction, Ground 8 cannot be relitigated here and will be denied.

      C.     *Arguments That Could Have Been Raised on Direct*
             *Appeal But Were Not Are Precluded From Review in This*
             *§ 2255 Proceeding Absent A Sufficient Showing To Avoid*
             *the Procedural Bar*

"A collateral challenge may not do service for an appeal."  United States v.

Frady, 456 U.S. 152, 165 (1982).  "[N]ormally a collateral attack should not be

entertained if defendant failed, for no good reason, to use another available avenue

of relief." Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987) (internal citation omitted). Grounds 1 through 4 and 9 were not raised on direct appeal. If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless the movant can show both (1) a "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains. See Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993); Mathews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).[6]

Here, Francis alleges, and the government does not dispute, that he could not have raised Ground 1 on direct appeal because it is based on "newly discovered evidence." Therefore this claim, while meritless for the reasons discussed below, is not precluded from review. As for the remaining claims, Francis argues that ineffective assistance of counsel precluded him from raising Grounds 2 through 4 and 9 on direct appeal.[7] The "cause and prejudice" that must be shown to consider a procedurally defaulted claim may include ineffective assistance of counsel. See

---

[6]A movant can also avoid procedural default by demonstrating actual innocence. Johnson v. United States, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, a § 2255 movant must show either cause and actual prejudice, or that he is actually innocent.") (internal quotation marks and citations omitted). Actual innocence is a strict standard that generally cannot be met "where the evidence is sufficient to support a conviction on the charged offense." Id. (internal quotation marks and citation omitted).

[7]Francis does not raise ineffective assistance of counsel directly as a ground for relief in his § 2255 relief.

Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005). "Actual prejudice" requires a showing that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Johnson v. United States, 278 F.3d 839, 844 (8th Cir. 2002) (internal quotation marks and citation omitted).

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Francis must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Id. at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. Second, Francis "must show that the deficient performance prejudiced the defense." Id. at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court need

not address both components if the movant makes an insufficient showing on one of the prongs.  Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995).  As a matter of law, counsel cannot be ineffective for failing to make a meritless argument.  Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994).

Francis cannot avoid the procedural default of Grounds 2 through 4 and 9 because his attorney was not ineffective for failing to raise these meritless arguments on appeal.  Even if Francis' allegations of ineffective assistance of counsel were sufficient to constitute cause and prejudice to excuse his otherwise procedurally defaulted claims, Francis cannot prevail on the merits of his claims for the reasons that follow.

D.    *Ground 1 Fails Because There is no Brady Violation*

In Ground 1 of his motion, Francis argues that the government failed to disclose material, exculpatory evidence to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963).  Francis also contends that the government presented false testimony of Timothy Hargrove to the jury.  The evidence at issue is a memorandum of an interview between the prosecutor, the postal inspector, and Harold Watkins, an alleged coconspirator.  The memorandum was written by the postal inspector and describes an interview with Harold Watkins.  After relating Watkins' statement about a trip he and Hargrove made to California to obtain

cocaine from someone named Mark Walker, the memo then states: "Watkins stated

he has never conducted any drug transactions with the Francis brothers. Watkins

stated that sometimes while he and Muhammad were smoking dope together,

Muhammad would mention that he had some 'home boys - Pete and Tony' in

town." The Eighth Circuit summarized Timothy Hargrove's testimony from the

first joint trial as follows:

> Timothy Hargrove testified that he flew with alleged coconspirator
> Harold Watkins to Los Angeles three times on behalf of the Francis
> organization. On the first trip in 1998, the green Cadillac loaded with
> cocaine was ready for them upon their arrival. On the other trips,
> Watkins telephoned Muhammad, met with him, and then drove a car
> loaded with cocaine back to St. Louis. Watkins and Hargrove were
> arrested in January 2000 on the return leg of their trip. During the
> consensual search of Hargrove's vehicle, an officer discovered 11.47
> kilograms of cocaine in the electronically-controlled secret
> compartment behind the rear seat.

Francis, 367 F.3d at 816. Timothy Hargrove did not testify at Francis' second trial,

and Harold Watkins did not testify at either trial. The government does not dispute

that the memorandum was not turned over to the defense in time for use at trial,

although Francis had obtained a copy before his second sentencing hearing in

December of 2005. Francis argues that this memorandum constitutes Brady

material that should have been disclosed to the defense before or during trial

because it allegedly contains exculpatory information and "proves" that: 1)

Hargrove lied on the witness stand; and, 2) there was not a single conspiracy. Francis is wrong.

"The government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment, and this duty extends to impeachment evidence." <u>United States v. Barraza Cazares</u>, 465 F.3d 327, 333 (8th Cir. 2006) (citing <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985)). To prove a <u>Brady</u> violation, a "defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." <u>Barraza Cazares</u>, 465 F.3d at 333.

Here, the memorandum is not material to guilt under <u>Brady</u> because Timothy Hargrove did not testify at Francis' second trial. At his retrial, the government did not introduce the testimony of Timothy Hargrove or evidence of his trips with Watkins. Because the evidence was not offered, the memorandum is irrelevant to a determination of Francis' guilt.[8] "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability is a probability

---

[8]Francis' brief repeatedly refers to things that happened at the first trial. Francis argues that Hargrove's testimony was false, that the Assistant United States Attorney's opening statement was misleading, and that the jury sat through a trial lasting three weeks. These arguments all relate to the first trial, and not to the trial in which Anthony Francis was convicted.

sufficient to undermine confidence in the outcome." <u>United States v. Conroy</u>, 424

F.3d 833, 837 (8th Cir. 2005) (internal quotation marks and citation omitted).

Ground 1 will be denied.

      E.     *Grounds 2 and 3 Fail Because the Prosecutor's Closing*
              *Argument Did Not Deprive Francis of a Fair Trial*

In Ground 2 of his § 2255 motion, Francis argues that he was denied his due

process right to a fair trial when the prosecutor told the jury in closing argument

that conspiracy is "a mental crime." Defense counsel objected on the ground that

the argument misstated the law, and I overruled the objection. The prosecutor then

stated that "It's coming to the agreement. Now, you have to — somebody in the

conspiracy has to do something to further it, and we have had plenty of evidence in

this case about that, but let's talk about the agreement." In Ground 3, Francis

contends that he was deprived of a fair trial when the prosecutor explained

"reasonable doubt" to the jury as follows:

> The other thing we need to talk about is beyond a reasonable doubt,
> because those four elements or things need to be proven to you beyond
> a reasonable doubt, and as we talked about in voir dire, that's the same
> standard as every criminal case in America. The judge will instruct
> you and give you a definition of beyond a reasonable doubt, and she
> will talk about things that would cause a reasonable person not to
> hesitate to act, and things like that. But to break it down out of the
> legal jargon, what does it mean? One example I think that works well
> is this. I've never been to China. I haven't seen it. I haven't been
> there, but I know beyond a reasonable doubt that it exists. People

have told me that it exists. I've talked to people that have been to China, and I've seen pictures. Beyond a reasonable doubt, China exists, but I've never been there. That's the kind of the standard for each of those four elements.

Defense counsel did not object to the prosecutor's explanation of reasonable doubt. Francis argues that this definition of reasonable doubt was erroneous and violated his due process rights.

"To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." United States v. DeGarmo, 450 F.3d 360, 365 (8th Cir. 2006) (internal quotation marks and citation omitted). To assess the prejudicial impact of prosecutorial misconduct, a reviewing court should consider "the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action." Id. (internal quotation marks and citation omitted). Relief is only granted if the verdict could reasonably have been affected by the alleged misconduct. Id. "The key question ultimately is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Schneider, 157 F. Supp. 2d 1044, 1055 (N.D. Iowa 2001) (internal quotation marks and citation omitted).

Applying these standards to the case at bar, Ground 2 fails because the prosecutor's explanation of the elements of conspiracy did not misstate the law. Looking at the entirety of the trial, the prosecutor's comment fairly explained the elements, including the requisite mental state, of the charged offense. In addition, although no curative instruction was sought or given at that time, the jurors were instructed that opening statements and closing arguments are not evidence and should not be considered as evidence. I properly instructed the jury on the elements of conspiracy, and the evidence of Francis' guilt was overwhelming. For these reasons, Ground 2 of Francis' § 2255 motion fails.

Ground 3 fails for the same reasons. Francis does not explain how the prosecutor's explanation of reasonable doubt misstated the law. Although the Eighth Circuit has advised prosecutors to "avoid trying to explain to the jury the meaning of beyond a reasonable doubt," United States v. Drew, 894 F.2d 965, 969 (8th Cir. 1990), when viewed in context this comment was not improper and did not violate Francis' due process rights. The explanation was preceded by the prosecutor telling the jury that the Court would instruct them on the definition of reasonable doubt, and the Court accurately and repeatedly informed the jury of the government's burden of proof. See United States v. Boesen, 541 F.3d 838, 845 (8th Cir. 2008). Juries are presumed to follow their instructions, Underdahl v.

Carlson, 462 F.3d 796, 801 (8th Cir. 2006), and there is nothing in the record to indicate the jury did not follow the Court's instructions in reaching their verdict. For these reasons, Francis is not entitled to habeas relief on Ground 3 of his § 2255 motion.

F.   *Ground 4 Fails Because The Challenged Testimony Was Properly Admitted*

In Ground 4, Francis argues that his due process rights were violated when United States Postal Inspector Dennis Simpson was allowed to testify as to the meaning of certain code words and phrases that were used in the wire tap conversations by Francis and his co-conspirators.  At trial, Simpson testified as to the drug world meaning of common words such as "girls," "China," "leave them with the other coach," and "boy."  Francis also challenges the testimony of police officer Richard Koenemann, a police officer for the City of St. Louis who also testified about common practices in the narcotics trafficking industry, including the use of code words to evade detection.  Francis claims that this testimony improperly invaded the province of the jury, was not helpful to the jury, and was actually expert testimony that was improperly admitted into evidence as lay testimony.  Francis' arguments fail.

"Law enforcement officers may testify as experts concerning the modus

operandi of drug dealers as such activities are not something with which most jurors would be familiar." <u>United States v. Espino</u>, 317 F.3d 788, 1164 (8th Cir. 2003). Experts may also "help the jury with the meaning of jargon and code words." <u>Id.</u> at 1164-65. As the Eighth Circuit has observed: "There is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis." <u>United States v. Delpit</u>, 94 F.3d 1134, 1145 (8th Cir. 1996).

Here, the evidence was properly admitted to assist the jury in understanding the wiretap and other evidence of the drug conspiracy. The record demonstrates that Simpson and Koenemann were more than qualified to offer their testimony as it was based on personal experience and training. Francis argues that these witnesses were not experts because they were not disclosed in accordance with Rule 16 of the Federal Rules of Criminal Procedure.[9] However, Agent Simpson's testimony was properly disclosed as expert testimony in the government's pretrial compliance [Doc. #310]. Even if Koenemann's challenged testimony was not

---

[9]Francis also points to a statement I made in the first, joint trial about not certifying witnesses as experts as proof that these witnesses are not considered experts. Francis misconstrues my statement, which I made to inform counsel that I would not tell the jury that any witness was an "expert." As I stated, "The rules of evidence decide whether he is allowed to state his opinions . . . ." The rules of evidence permitted these witnesses to offer the testimony the jury heard. It is not necessary for the Court to tell the jury that a witness is an expert, and I believe doing so has the potential to mislead or confuse the jury.

disclosed before the first, joint trial, it was certainly disclosed to Francis well before his second trial because these witnesses testified in the first trial. Accordingly, Francis can demonstrate no resulting prejudice from any alleged failures to disclose. Finally, to obtain relief Francis would still be required to demonstrate a "significant possibility" that the admission of the testimony had a "significant impact on the jury." See id. Francis cannot make the required showing here because the jury could have easily inferred, from evidence other than the challenged testimony, that Francis was guilty. For these reasons, Ground 4 of Francis' § 2255 motion will be denied.

      G.     *Ground 9 Fails Because the Prosecutor Did Not Present*
                *Perjured Testimony to the Grand Jury*

In his final ground for relief, Francis alleges that the prosecutor violated his due process rights because he refused to dismiss the indictment after "discovering that it was based on perjured testimony." Ground 9 will be denied because Francis has no evidence that false testimony was presented to the Grand Jury. At the first, joint trial, postal inspector Simpson testified that he believed the identity of the co-conspirator known as "Bird Man" to be Travis Porter. This is the same testimony Simpson gave to the Grand Jury. Francis apparently believes that Simpson's testimony was false because, also during the first trial Timothy Hargrove testified

- 23 -

that Bird Man resembled Tommy Macon.  Simpson was recalled to the stand in that

trial for cross-examination about Bird Man's identity, and stated the reasons --

mainly, that he kept pigeons in a bird cage in his back yard -- for his identification

of Travis Porter as Bird Man.  The information Simpson testified about was

consistent with the information given to him by Hargrove during the course of the

investigation, and Francis has not shown that his testimony was false.  There is

nothing in this record to demonstrate that Simpson testified falsely, in the Grand

Jury proceedings or elsewhere, about the identity of Bird Man.  Francis' argument

that he is entitled to habeas relief in Ground 9 of his § 2255 motion is meritless and

will be denied.

H.     *I Will Not Issue a Certificate of Appealability*

As Francis has not made a substantial showing of the denial of a federal

constitutional right, this Court will not issue a certificate of appealability.  See <u>Cox</u>

<u>v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997) (citing <u>Flieger v. Delo</u>, 16 F.3d 878,

882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable

jurists, reasonably subject to a different outcome on appeal or otherwise deserving

of further proceedings).

For all the reasons stated above, Francis' §2255 motion will be denied.

**IT IS HEREBY ORDERED** that Anthony Francis' motion to vacate, set

aside or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Francis has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of July, 2010.